FRANCIS G. F. WALTEMEYER *vs.* MARY ANN BAUGH-
MAN, by her next friend and Husband DANIEL
BAUGHMAN, and DANIEL BAUGHMAN and MARY
ANN BAUGHMAN, Trustees.

*Ejectment—Outstanding title—Adverse possession—Evidence.*

An outstanding title in another which will give protection to a de-
fendant in an action of ejectment, must be a clear subsisting title
on which recovery can be had.

The leasehold interest in a lot of ground was conveyed by W. to B.,
on the 1st of January, 1836.  Shortly afterwards W. entered upon
the property, and he with his family continued in possession for
over twenty years, paying the taxes and ground rent, and allowing
members of his family to spend their money in erecting buildings
and improving the property.  In an action of ejectment brought
by persons claiming through W., it was HELD:

1st. That these were facts clearly indicating a claim of title to the
property by W., and that his possession was maintained under such
claim, and not under a contract with or permission from B.

2nd. That such possession must be regarded as adverse and conclu-
sive against B. and those claiming under him.

3rd. That the mere verbal declarations of W. were inadmissible to
show title to the property in the defendant, who did not profess to
claim under B.

It is the intent with which the possession is maintained that gives it
its character as adversary.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs asked the follow-
ing instructions:

1. That the deed offered in evidence by the defendant from Adam Waltemeyer to James Blair, is no bar to the recovery of the plaintiffs in this case.

2. That if the jury find from the evidence before them, the execution, acknowledgment and registration of the deeds offered in evidence by the plaintiffs; and further find that administration was duly granted to Charles T. Waltemeyer, and administration *d. b. n.* to Jacob Waltemeyer; that the sale of the property in question was ordered by the Orphans' Court, and that the plaintiffs purchased the same, as set forth in the proceedings and deeds offered in evidence, then the plaintiffs are entitled to recover.

3. That there is no evidence in this case, that the defendant has had for a period of twenty years prior to the bringing of this suit, exclusive, adverse and unbroken possession of the premises in controversy.

4. To exclude and rule out the whole of the evidence of the defendant's witnesses, which was taken subject to exception, upon the ground that said testimony does not prove, or tend to prove, a title by possession in the defendant.

5. To exclude the evidence of the witness, Daniel Donnelly, admitted subject to exceptions, in relation to the declaration of Adam Waltemeyer and his wife, upon the ground that said evidence is inadmissible as proof of title in Francis G. F. Waltemeyer, upon the following grounds:

1st. That it is inadmissible under the provisions of the Statute of Frauds.

2nd. That it is not a declaration as to the title of the property.

And the defendant offered the following prayer:

Under the pleadings and evidence in this cause, the plaintiffs are not entitled to recover, unless they show a continuous adverse possession of the property mentioned in the evidence in themselves, and those through whom

they claim, for twenty years prior to the institution of this suit, and of this there is no evidence.

The Court, (PHELPS, J.,) granted the prayers of the plaintiffs, and rejected the prayer of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Sebastian Brown*, for the appellant.

*Julian I. Alexander*, for the appellees.

IRVING, J., delivered the opinion of the Court.

This is an action of ejectment for a lot of ground and improvements thereon in Baltimore County, originally leased by Robert Caton in 1824, for ninety-nine years, renewable forever, which by successive assignments finally became the property of Adam Waltemeyer, by deed from Samuel J. Donaldson, trustee, dated 6th of March, 1835. Waltemeyer died in 1859, but administration on his estate was not granted until 1876, when the property now in controversy, was sold and conveyed to the plaintiffs in this suit by the administrator. They leased the property to one Hugh Rogan, who occupied the same for several years as tenant of appellees, and was then rented by the defendant, the present appellant.

The appellant rested his defence upon two grounds, viz., that the property was given to him by his father, Adam Waltemeyer; and that title was out of Adam Waltemeyer and his representatives, and in James Blair, (or his representatives.) The Court below ruled that there was no legally sufficient evidence to support the contention, that there was a gift from the father to the appellant, and as we think properly; so that the appel-

lant's case depends solely on the question whether there was a legally outstanding title in any one which protected him in his possession as against the appellees. The appellant relies on a deed from his father, Adam Waltemeyer, to one James Blair, dated the first of January, eighteen hundred and thirty-six, but does not claim under Blair. The appellees contend that this deed affords the appellant no protection in his possession, because there had been a notorious, continuous, exclusive and adverse possession by Adam Waltemeyer and his representatives for a period of forty years and more, which barred James Blair or his representatives of any claim on the property.

The first prayer of the plaintiffs and the only prayer of the defendant, directly presented the effect of this deed, when considered together with respect to the evidence. The plaintiffs' prayer does not refer to the evidence of adverse possession, but was, of course, based on it; but the defendant's prayer asked the Court to say there was "no evidence of continuous adverse possession in the plaintiffs, or those under whom they claim, for twenty years," &c. The Court rejected this prayer of the defendant; for not only was there *some* evidence of "adverse possession," for a period sufficient to presume a deed, or bar the action of Blair or his representatives; but assuming the truth of that which was proven, and which was wholly uncontradicted, it was conclusive against James Blair, or those claiming under him.

An outstanding title in another which will give protection to a defendant in ejectment, this Court decided in *Hall vs. Gittings' Lessee*, 2 *H. & J.*, 112, "means such a title as the stranger could recover on in ejectment against either of the contending parties." It must be therefore a clear subsisting title on which recovery can be had. According to the evidence a man by the name of Matwell occupied the property after Waltemeyer purchased of

Donaldson, trustee, and was in possession when Adam Waltemeyer conveyed to Blair, and until 1837 or 1838, and died in actual possession. After his death, Adam Waltemeyer took possession and carried his family there. From that time onward he paid the taxes and paid the rent reserved in the original lease; and in fact occupied the property as his own. A new brick house was built on the premises by his wife or his son. Whether the wife's or son's money paid for this house is immaterial. The building on the land is the material fact. The payment of taxes, the payment of the rent reserved in the lease, and the allowance of members of his family to spend their money in erecting buildings and improving the property, are facts clearly indicating a claim of title to the property, and that the possession was maintained under such claim. It is the intent with which the possession is maintained, that gives it its character as adversary, and the acts mentioned under the authorities are clearly indicative of a claim of property, and characterize the possession as one under a claim of title. *Angell on Limitations,* 399, 400, 401, 402 and 403; *Wood on Limitation of Actions,* 513, 521. In this State the Statute of 21st James I, ch. 16, is in force, and "possession for twenty years by force of that statute is like a descent at common law, and tolls the entry of the person having right; and though the very right be in the defendant, yet he cannot justify his ejecting the plaintiff." *Armstrong vs. Risteau's Lessee,* 5 *Md.,* 256. For whatever purpose the deed to Blair was given, it does not appear that he ever, in any way, interfered with the possession and claim of Waltemeyer. In the absence of proof to the contrary, it may be assumed that he acquiesced in the claim of title; and it is on that principle, that a title by possession is supposed to have been perfected after possession for the period of twenty years named in the statute, within which suit to regain possession must be instituted. For more than the statutory

period of twenty years, Waltemeyer remained in possession under claim of title, so that in his life-time he acquired as against Blair and his representatives full protection against his or their claim; and for seventeen years after his death, the widow and children occupied the premises and continued the possession until 1876, when administration was granted, and the sale was made to the appellees. From that time the appellees remained in possession by their tenant, until his ouster by the appellant. Thus was possession continued by Adam Waltemeyer, and those claiming under him, for a period more than double the time required by the statute to perfect a title by adversary claim.

If the original entry and subsequent possession by Adam Waltemeyer were referable to any contract with Blair, or to permission merely from Blair, the possession would not have been adversary, and could not have ripened into title, unless Blair had notice that possession was continued under claim of right. *Gwynn vs. Jones' Lessee,* 2 *Gill & Johns.,* 173. If it were shown that Waltemeyer's possession commenced rightfully, no presumption would be made in his favor by reason of his subsequent acts, that he was holding adversely. *Ib.* But there is no evidence tending to show any thing of this kind; and in the absence of such evidence, his acts which indicate a claim of right must be allowed their due weight, and to work out their ordinary result. When Waltemeyer conveyed to Blair, Matwell was in possession. Whether he attorned to Blair does not appear. He lived there a year or more after Blair got his deed, and died there. Then it was that Waltemeyer entered and took actual possession, which he maintained with all the *indicia* of ownership. It cannot be that after such a lapse of years a presumption will be made, that he entered under a contract or by permission, to the defeat of this claim which would otherwise be perfect, when it does not appear there is the slightest foun-

Waltemeyer *vs.* Baughman.

dation for such idea. More especially will it not be made in favor of the appellant who does not claim under Blair, and does not show the existence of anybody capable of asserting any right Blair might have.

The appellant having abandoned all claim by reason of adversary possession in himself, the third prayer of the appellees was rightly granted. The fourth and fifth prayers of the appellees which related to certain evidence offered by the appellant in support of the theory of gift from his father to him, and which was admitted subject to objection, were properly granted. It is clear that the declarations of his father respecting appellant's liability for the building of the house did not sustain title to the land. If that gave him any claim on account of the house, it would have to be asserted in another forum. The first and second prayers of the plaintiffs only remain to be considered. The law intended to be laid down by the Court was undoubtedly correct; but they omit to require the jury to find from the evidence, that there was an adverse possession, and to base the law of these prayers on the condition of their so finding. This ordinarily would be fatal to these prayers; but no objection was taken to the Court's assuming the adverse possession as a fact; nor was that objection pressed here. The jury could not be misled for there was no contradictory testimony, and they could find no other verdict consistently with the proof. The whole case rested on the evidence of adverse possession, and the jury have, by their verdict, found that it existed. It does not appear that any injury has been suffered by the omission.

The judgment will be affirmed.

*Judgment affirmed.*